THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NALENA T.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 23 C 0056 |
| v. ) | |
| ) | Magistrate Judge Laura K. McNally |
| FRANK BISIGNANO, ) | |
| Commissioner of ) | |
| Social Security,[2] ) | |
| ) | |
| Defendant. ) | |

**ORDER**[3]

Before the Court is Plaintiff Nalena T.'s memorandum in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying her applications for disability benefits (Dkt. 16: Pl. Mem. in Support of Summ. J.: "Pl. Mem.") and Defendant's motion and memorandum in support of summary

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On January 25, 2023, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 10.)

judgment (Dkt. 21: Def. Mot. for Summ. J.; Dkt. 22: Def. Mem. in Support of Summ. J.: "Resp.")

## I. Procedural History

Plaintiff filed her application for disability insurance benefits and for supplement security income on February 21, 2020. (R. 224-236.) She alleged that her onset date was December 1, 2019. (*Id.*) Her date last insured was December 31, 2020. (R. 14.)

On October 21, 2021, Plaintiff appeared for a hearing before ALJ Luke Woltering. (R. 40-63.) The ALJ heard testimony from Plaintiff, who was represented by an attorney, and a vocational expert. On March 29, 2022, the ALJ found Plaintiff not disabled from her onset date through the date of his decision. (R. 13-34.) The Appeals Council denied review (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Pufahl v. Bisignano*, No. 24-1545, 2025 WL 1742967 (7th Cir. June 24, 2025). After considering the ALJ's opinion and the parties' briefs, the Court affirms the ALJ's decision and denies Plaintiff's motion for remand.

## II. ALJ Decision

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One, he found that Plaintiff had not engaged in substantial gainful activity since her onset date. (R. 16.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of degenerative joint disease of the right knee status post surgery; asthma; decreased hearing in the left ear;

2

decreased vision in the left eye; obesity; and major depressive disorder and bipolar disorder. (*Id.*) At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 17.) As part of this determination, the ALJ undertook the "Part B" analysis to assess mental limitations. (R. 18.) He found that Plaintiff had moderate limitations in all four of the criteria: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing herself. (R. 18-20.)

Next, the ALJ determined that Plaintiff had the residual functional capacity to perform light work, with the following additional restrictions:

> Limited to stand and walk in combination up to two hours in an eight-hour day; can occasionally push and pull with the right lower extremity; cannot climb ladders, ropes, or scaffolds or balance; can occasionally climb ramps and stairs, kneel, couch, and crawl; cannot work around hazards such as unprotected heights and exposed moving mechanical parts' cannot tolerate more than occasional, concentrated exposure to flames, noxious odors, dusts, mists, gases , and poor ventilation;  can understand, remember, and carry out simple work instructions and can sustain concentration to perform simple routine, repetitive tasks; can adapt to simple routine changes and pressures in the work setting; can interact with coworkers and supervisors performing job duties that do not involve tandem tasks or teamwork; and should have no more than incidental contact with the public.
> (R. 21-22.)_

At Step Four the ALJ found that Plaintiff could perform her past work as a fast-food worker and mail handler, as those jobs are generally performed. (R. 29.) Therefore, the ALJ found that Plaintiff was not disabled. (R. 30.)

3

**III.     Legal Standard**

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at Step Three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

4

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable

5

evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

### IV.     Analysis

Plaintiff's arguments relate only to the ALJ's evaluation of certain medical opinions related to her mental limitations. Therefore, the Court limits its analysis to that issue. Plaintiff contends that (1) the ALJ did not provide valid reasons to reject a state agency psychologist's limitation to 1-2 step tasks and did not conduct a supportability analysis of that opinion; and (2) the reasons the ALJ gave for rejecting the opinion of Plaintiff's treating psychiatrist were not supported by substantial evidence. (Pl. Mem. at 1.)  After reviewing the evidence and the parties' arguments, the Court concludes that the ALJ did not err in his evaluation of the medical opinions.

Because Plaintiff filed her case after March 17, 2017, the ALJ "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Patrice W. v. Kijakazi*, No. 20 C 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. § 404.1520c(a)) (internal quotations omitted). Instead, the ALJ is advised to consider a variety of factors in evaluating medical opinions and must "[e]xplain how [she] considered the supportability and consistency factors" in particular. *See* 20 C.F.R. § 404.1520c(b)(2); *Bakke v. Kijakazi*, 62 F.4th 1061, 1067-68 (7th Cir. 2023) (affirming that under §

6

404.1520c(b)(2), an ALJ must consider supportability and consistency of medical opinions). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. March 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

### A. The ALJ Supported with Substantial Evidence the Omission of a 1-2 Step Limitation from the Residual Functional Capacity.

The ALJ considered and discussed both state agency opinions about Plaintiff's mental limitations before explaining what weight he gave each of them. At the initial level, state agency psychologist Jeanne Yakin, Ph.D, opined that Plaintiff had moderate limitations in all four of the Paragraph B factors. (R. 71.) In the "checkbox" portion of the opinion form,[4] Dr. Yakin found that Plaintiff was moderately limited in her ability to remember and carry out detailed instructions, to maintain attention and concentration for extended periods, and to interact appropriately with the general public. (R. 79-81.) She had no limitations in her ability to remember or carry out short

---

[4] When a state agency psychologist assesses a claimant's mental RFC, they use a form called Mental Residual Functional Capacity Assessment, which has two relevant components: (1) a checkbox-type worksheet "to aid in deciding the presence and degree of functional limitations and the adequacy of documentation" and (2) a narrative section that contains a written assessment of the claimant's residual functional capacity. The checkbox portion breaks down the Paragraph B criteria into a number of narrower limitations. As one example, questions differentiate between a claimant's ability to follow simple and detailed instructions. https://secure.ssa.gov/poms.nsf/lnx/0424510060 *visited on* August 20, 2025.

and simple instructions or work-like procedures. (R. 79.) Plaintiff was also not limited in her ability to work within a schedule, maintain regular attendance, work in proximity to others without distraction, and make simple work-related decisions. (R. 80.) Dr. Yakin determined in the narrative portion of the opinion that overall, Plaintiff was capable of performing 1-2 step tasks, concentrating sufficiently to complete such tasks, and interacting with others in a work setting with reduced social demands but not working with the general public on an ongoing, continuous basis. (R. 82.) Finally, Dr. Yakin opined that Plaintiff could adapt to simple, routine changes and pressures in the workplace. (*Id.*)

At the reconsideration level, state agency psychologist David Voss affirmed Dr. Yakin's checkbox findings and overall opinion to the extent that it found that Plaintiff retained the capacity to make "simple work-related activities with social limitations." (R. 119.) Dr. Voss' determination of Plaintiff's residual functional capacity did not limit her to 1-2 step tasks. (R. 129.) Instead, Dr. Voss opined in the narrative portion of the opinion form that Plaintiff retained the mental capacity for work-related activities that involve simple instructions and routine/repetitive tasks. (*Id.*)

The ALJ found the part of Dr. Yakin's opinion that Plaintiff could perform 1-2 step jobs of limited persuasive effect. (R. 32.) Specifically, the ALJ explained that the limitation to 1-2 step tasks was inconsistent with evidence that Plaintiff could perform multi-step tasks such as shopping by computer, paying bills, handling a savings

8

account, and following written and spoken instructions. (*Id.*) The ALJ found the rest of Dr. Yakin's opinion to be generally persuasive. He noted that Dr. Voss adopted the limitations in the remainder of Dr. Yakin's opinion and found that Dr. Voss' entire opinion was persuasive and supported by the medical evidence. (*Id.*) The ALJ adopted Dr. Voss' determination of Plaintiff's residual functional capacity with respect to her mental limitations. (R. 21-22.)

Plaintiff does not contest the ALJ's consideration of either Dr. Voss' opinion or the remainder of Dr. Yakin's opinion except for the 1-2 step task limitation. Her sole argument is that the ALJ erred in evaluating both the consistency and supportability of Dr. Yakin's 1-2 step limitation. The Court disagrees and finds that the ALJ's determination is supported by substantial evidence.

The ALJ offered specific reasons for finding that a 1-2 step limitation was inconsistent with the medical evidence. See, *James T. v. Kijakazi,* No. 20 CV 4990, 2023 WL 8372039, at *3 (N.D. Ill. Dec. 1, 2023) (ALJ erred by failing to either adopt opinion's 1-2 step tasks limitation or explain why she declined to do so.) An ALJ "must explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Moira L. v. Kijakazi*, No. 19 C 2687, 2022 WL 846469, at *2 (N.D. Ill. Mar. 22, 2022) (internal quotation marks omitted). In this case the ALJ did just that, pointing to Plaintiff's ability to perform numerous multi-step activities. The ALJ further explained that the medical evidence (which he reviewed in detail throughout the

9

opinion) did not support the 1-2 step limitation. Instead, the evidence supported a finding that Plaintiff could undertake work that involved simple instructions and simple, routine, and repetitive tasks. (R. 32.) The Court finds that the ALJ more than minimally articulated his reasons for declining to include a 1-2 step limitation in the residual functional capacity.

Plaintiff argues that the ALJ's consistency analysis was flawed because her ability to pay bills, shop by computer, and follow directions is not reflective of her ability to perform multi-step tasks on a sustained basis in the workplace. (Pl. Mem. at 7.) While that may be true in some situations, Plaintiff points to no evidence that her ability to perform these tasks is so limited.[5] Moreover, the ALJ stated that he did not find Plaintiff's ability to perform the tasks as conclusive evidence that she could perform full-time work. (R. 23.) Instead, he viewed them in combination with objective evidence and Plaintiff's treatment history, which together demonstrated the ability to perform significant activity on a regular and continuing basis. (*Id.*)

Plaintiff additionally contends that the ALJ failed to consider medical evidence that was consistent with a 1-2 step limitation. But contrary to Plaintiff's argument, the ALJ acknowledged nearly all the evidence Plaintiff identifies. (R. 19-20, 28-29.) For example, the ALJ noted that at her consultative examination, Plaintiff was restless and

---

[5] Plaintiff also argues that the ALJ was wrong to place weight on her ability to drive because she testified that she does not like to drive and that it hurts her leg. Neither of these reasons casts doubt on Plaintiff's mental ability to perform the many steps required to drive a car.

10

overactive and had moments of excessive talking. (R. 19.) He acknowledged that Plaintiff regularly reported having hallucinations and that some counseling records documented loose association of thought, but other times, Plaintiff's conversations were lucid. (*Id.*) The ALJ also noted that some treatment records noted irritability and depression although there were other records and mental status examinations that evaluated that her mood symptoms were within normal limits. (R. 28.) Plaintiff's argument that this evidence is consistent with a 1-2 step task limitation rather than a limitation to simple and routine tasks is merely an impermissible request that the Court reweigh the evidence.

With respect to the supportability factor, Plaintiff contends that the ALJ failed to consider whether the 1-2 step limitation was supported. (Pl. Mem. at 9.) Plaintiff's argument is ignores the plain language of the decision, where he stated that the evidence supported a limitation to simple work, but not a further limitation to 1-2 step tasks. Plaintiff does not fault the ALJ's evaluation of the remainder of Dr. Yakin's opinion or of Dr. Voss' entire opinion.

Plaintiff suggests that because the ALJ found that the rest of Dr. Yakin's opinion was supported, he should have also included the 1-2 step task limitation in the residual functional capacity determination. (Pl. Mem. at 10.) But the law does not require an ALJ to adopt a doctor's opinion either in whole or not at all. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record, but the ALJ is not

11

required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians."); *Reyes v. Colvin*, No. 14 C 7359, 2015 WL 6164953, at *13 (N.D. Ill. Oct. 20, 2015) ("The rule in this circuit is that 'an ALJ may choose to adopt only parts of [a medical] opinion.'")

Here, where the ALJ explained why and how he weighed the state agency opinions and how they influenced the residual functional capacity determination, there was no error. [6]

### B. The ALJ Did Not Err by Rejecting the Opinion of Plaintiff's Treating Psychiatrist.

Plaintiff's treating psychiatrist, Benjamin Stephan, M.D., completed an opinion assessing Plaintiff as having marked or extreme limitations in 11 out of 16 functional areas. (R. 575-77.) Among other things, Dr. Stephan opined that Plaintiff was markedly limited in her ability to understand, remember, and carry out very short and simple instructions, maintain attention and concentration for normal periods of time and respond appropriately to changes in the work setting. (*Id.*) With respect to the Paragraph B criteria, Dr. Stephan opined that Plaintiff had marked limitations in understanding, remembering, and applying information, extreme limitations in

---

[6] Plaintiff argues that the ALJ's error with respect to the 1-2 step task limitation was prejudicial because the jobs the VE testified Plaintiff could do required more than two steps. (Pl. Mem. at 10-11.) But that argument presupposes that the ALJ erred in omitting that limitation from the residual functional capacity determination. The jobs identified by the VE are consistent with the ALJ's given limitations to simple, routine, and repetitive work.

12

concentrating, persisting, and maintaining pace, and would be off-task 16-20 percent of the workday. (*Id.*)

The ALJ found Dr. Stephan's opinion unpersuasive. (R. 31.) While he offered a number of reasons for this determination, the Court agrees with the ALJ that the most significant consideration was his finding that the opinion was inconsistent with Plaintiff's longitudinal treatment history and unsupported by Dr. Stephan's own treatment notes. (*Id.*) The Court finds that this reasoning is supported by substantial evidence.

As explained above, the ALJ discussed Plaintiff's treatment history in detail. He noted both positive and negative signs from appointments with therapists, the consultative examiner, and a doctor who saw Plaintiff for medication management. (R. 29.) Such evidence included examinations that found normal orientation, mood, and speech symptoms and those that documented excessive speech, self-reports of hallucinations, and assessments of irritability and depression. (R. 28.)

With respect to Dr. Stephan's treatment notes, the ALJ considered that Dr. Stephan assessed Plaintiff with depression because of situational factors, that Plaintiff's medication was helpful, that there were no abnormalities in a number of her mental status exams, and that she was continued on her current treatment plan without changes that would suggest such severe limitations as he offered in the opinion. (R. 31.) The ALJ also considered that less than three months after Dr. Stephan offered his

13

opinion, another doctor performed a mental status examination and assessed Plaintiff as cooperative, calm, and with a good mood, normal rate, tone, and volume of speech, and a logical and coherent thought process. (*Id.*) The examination also found Plaintiff to have good attention and concentration, intact memory, and good insight.[7] These reasons constitute substantial evidence to support the ALJ's finding that Dr. Stephan's opinion was inconsistent and unsupported by his own treatment notes and the rest of the medical record. Plaintiff's argument to the contrary is an impermissible request to reweigh the evidence.

Plaintiff's other assignments of error do not convince the Court that the ALJ's assessment of Dr. Stephan's opinion was faulty.

First, it was not wrong for the ALJ to find the opinion "somewhat internally inconsistent" because Dr. Stephan both noted that Plaintiff had no reduced intellectual functioning and also opined that she was markedly limited in understanding and remembering even short and simple instructions. (*Id.*) Plaintiff contends that her marked limitations in these areas stemmed from her mental impairments and not her IQ and thus there was no inconsistency, *i.e*, she could have normal intelligence and still have marked limitations in her ability to understand and remember even short and simple instructions. But the questionnaire Dr. Stephan completed did not indicate that

---

[7] Plaintiff accuses the ALJ of cherry-picking this single examination to counter evidence that supports Plaintiff's position. (Pl. Mem. at 14.) The Court disagrees. As described above, the ALJ confronted nearly all of the evidence Plaintiff cites as being overlooked.

he was being asked only to assess Plaintiff's intellectual capacity as it related to her mental impairments. As Defendant points out, other questions on the form did specify they were solely measuring limitations caused by Plaintiff's mental impairments. (Resp. at 11.) The ALJ properly determined that it was somewhat inconsistent for Plaintiff to have such marked limitations despite having normal intellectual functioning.[8]

Plaintiff argues that Dr. Stephan's opinion about Plaintiff's ability to understand, remember, and apply information was not inconsistent with the record because the state agency doctors also found her to have limitations in this area. (Pl. Mem. at 13.) But the state agency doctors opined that Plaintiff's limitations were considerably more benign than those found by Dr. Stephan. For example, Drs. Yakin and Voss opined Plaintiff was not significantly limited in her ability to remember and understand very short and simple instructions. Dr. Stephan found Plaintiff to be markedly limited in this area. The difference plainly represents an inconsistency and supports the ALJ's determination.

In sum, the Court finds that substantial evidence supports the ALJ's decision to reject Dr. Stephan's opinion.

---

[8] The ALJ found an inconsistency in Dr. Stephan's opinion because he opined that Plaintiff had an overall moderate limitation interacting with others despite finding only mild limitations in getting along with coworkers and peers. (R. 31). The Court concedes that this was not a significant discrepancy because Dr. Stephan also opined that Plaintiff had other moderate limitations in her ability to interact. Any error is harmless, however, because the Court is convinced that even omitting this reason from the ALJ's analysis, he still would have found Dr. Stephan's extreme opinion inconsistent and unsupported by the medical evidence.

15

CONCLUSION

For the reasons explained above, the Court grants Defendant's motion to affirm the ALJ's decision (Dkt. 21) and denies Plaintiff's motion to remand. (Dkt. 16).

SO ORDERED.

ENTER:

*Laura K. McNally*

LAURA K. MCNALLY
United States Magistrate Judge

DATED: August 27, 2025